**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AEGIS 11 S.A., | |
| Plaintiff, | C.A. No. 1:19-cv-01161-RGA |
| v. | |
| BELKIN INTERNATIONAL, INC. | **JURY TRIAL DEMANDED** |
| Defendant. | |

| | |
|---|---|
| AEGIS 11 S.A., | |
| Plaintiff, | C.A. No. 1:19-cv-01162-RGA |
| v. | |
| NETGEAR, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

| | |
|---|---|
| AEGIS 11 S.A., | |
| Plaintiff, | C.A. No. 1:19-cv-01163-RGA |
| v. | |
| ROKU, INC. | **JURY TRIAL DEMANDED** |
| Defendant. | |

| | |
|---|---|
| AEGIS 11 S.A., | |
| Plaintiff, | C.A. No. 1:19-cv-01164-RGA |
| v. | |
| RUCKUS WIRELESS, INC., ARRIS US HOLDINGS, INC., ARRIS INTERNATIONAL, INC., | **JURY TRIAL DEMANDED** |

ARRIS ENTERPRISES LLC,
ARRIS SOLUTIONS, INC., and
COMMSCOPE HOLDING COMPANY, INC.,

        Defendants.

**PLAINTIFF AEGIS 11 S.A.'S OPPOSITION TO DEFENDANTS'
PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Timothy Devlin (DE 4241)
DEVLIN LAW FIRM LLC
1526 Gilpin Ave.
Wilmington, DE  19806
(302)-449-9010
tdevlin@devlinlawfirm.com

*Attorneys for Plaintiff Aegis 11 S.A.*

Dated:   November 20, 2019

2

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS .................................................................... 1

II.   SUMMARY OF ARGUMENT ...................................................................................... 1

III.  STATEMENT OF FACTS ........................................................................................... 2

IV.   ARGUMENT ............................................................................................................ 4

    A.   Procedural Standards.......................................................................................... 4

    B.   Section 101 Standards ........................................................................................ 4

    C.   Claim 1 of the '553 Patent Recites Eligible Subject Matter ........................................... 6

        1.   Claim 1 of the '553 Patent Is Patent-Eligible Under Step One of the *Alice* Standard.. 6

        2.   To the Extent Step 2 of the *Alice* Test Is Necessary, Claim 1 of the '553 Patent Encompasses an Inventive Concept........................................................................ 13

V.    CONCLUSION......................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018)................. 5

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ............................... 1,5,6,10,13,14

*Anacora Techs. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018) ............................................ 12

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018)..................................................... 2, 5, 8, 10

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed, Cir. 2016)....................................... 6, 11, 13

*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) ......................... 11

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*, No. 2018-1863, 2019 U.S. App. LEXIS 34075

    (Fed. Cir. Nov. 15, 2019) ...................................................................................................... 11

*Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000).................................................................... 4, 7, 9

*Mayo Collaborative v. Prometheus Labs.*, 132 S. Ct. 1289 (2012).................................... 5, 11, 13

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016).......................... 6

*Prism Technologies LLC v. T-Mobile USA, Inc.*, 696 Fed. Appx. 1014 (Fed. Cir. 2017)............ 11

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017) ................ 12

*Skinner v. Switzer*, 562 U.S. 521 (2011) .................................................................................... 4

*Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004) .................................................................... 4

**Statutes**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................... 4

ii

## I.    NATURE AND STAGE OF PROCEEDINGS

On June 21, 2019, Plaintiff Aegis 11 S.A. ("Aegis 11" or "Plaintiff") filed complaints against each of Belkin International, Inc., Netgear, Inc., Roku, Inc., Ruckus Wireless, Inc., Arris US Holdings, Inc., Arris International, Inc., Arris Enterprises LLC, Arris Solutions, Inc., and CommScope Holding Company, Inc. (collectively, "Defendants") alleging infringement of U.S. Patent Number 6,839,553[1] ("the '553 patent") and two other patents not as issue here.  (D.I. 1.[2]) On October 15, 2019, Defendants submitted their Partial Motion to Dismiss for Failure to State a Claim and Memorandum in Support of that Motion.  (D.I. 8 and 9, respectively.)  Aegis 11 hereby submits its Opposition to Defendants' Motion.

## II.    SUMMARY OF ARGUMENT

Claim 1 of the '553 patent is patent eligible under the Supreme Court's two-part test articulated in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).  Claim 1 is not abstract because, read as a whole, it is directed to a particularized improvement in a useful process in a specific environment, and this improvement requires unconventional steps and specific hardware.  Only by ignoring key claim limitations could one argue that claim 1 of the '553 patent is abstract—and that is exactly what Defendants do.  To justify this tactic, Defendants resort to making factual arguments and drawing inferences favorable to Defendants, neither of which is appropriate at the motion to dismiss stage.  Even when evaluated on the merits, however, Defendants' factual allegations still fail to support their arguments.  Thus,

---

[1] The '553 patent is available at both D.I. 1, Exhibit A, and D.I. 9, Exhibit A.

[2] Because Aegis 11's allegations regarding the '553 patent do not differ between complaints in ways relevant to Defendants' Motion, Aegis 11 will cite to Civil Action No. 1:19-cv-01163-RGA, including D.I. 1 ("Complaint"), for the remainder of this Opposition unless otherwise specified.

Defendants have failed to meet their burden to demonstrate that claim 1 of the '553 patent is directed to an abstract idea.

If the Court were to decide that claim 1 is directed to an abstract idea, however, claim 1 embodies a significant inventive step relative to the prior art and is therefore patent eligible.  The invention in claim 1 improves the efficiency and reliability of the impacted wireless network and increases the security of both the mobile station and the network recited in the claims.  Defendants invite the Court to dismiss these improvements, seeking again to have the Court ignore key claim limitations and to draw factual inferences in Defendants' favor, but this is inappropriate at the motion to dismiss stage.  Without the benefit of favorable factual inferences drawn in their favor, Defendants arguments fail.

In short, as Defendants surprisingly volunteer, "the crucial question" addressed in Defendants' Motion "is the extent to which the specification admits that all of the technical details of the claims were already conventional."  (D.I. 9 at 9.)  But the question of whether subject matter is "well-understood, routine, and conventional . . . is a factual determination."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).  And such determinations are simply inappropriate at this stage of the case.

When all factual inferences are drawn in Aegis 11's favor, as they must be in a motion to dismiss, Defendants' arguments fail as a matter of law.  The Court should deny Defendants' Motion accordingly.

## III.    STATEMENT OF FACTS

On January 4, 2005, the '553 patent was duly and legally issued to assignee LG Information & Communications, Ltd., by the U.S. Patent and Trademark Office.  (D.I. 1 at ¶ 25; '553 patent at cover page.)  The '553 patent claims priority to U.S. Patent Application No. 09/436,726, filed on November 9, 1999, and Korean Patent Application No. 1999-6891, filed on

March 3, 1999. ('553 patent at cover page.) Aegis 11 acquired the '553 patent in or about June of 2019. (D.I. 1 at ¶ 22.)

As set forth in the Complaint, the inventions claimed in the '553 patent relate to technologies for managing operational parameters in terminal devices in wireless networks. (D.I. 1 at ¶ 27.) More specifically, the inventions claimed in the '553 patent specify how messages transmitted in a wireless communication network are manipulated to yield desired levels of mutual authentication and network security. (D.I. 1 at ¶ 31; '553 patent at 1:8-15.) These technologies were subsequently incorporated into Wi-Fi Protected Access 2 ("WPA2") and Wi-Fi Protected Access 3 ("WPA3") network security protocols that became mandatory aspects of the 802.11 series of Wi-Fi industry standards promulgated by the Institute of Electrical and Electronics Engineers ("IEEE"). (D.I. 1 at ¶ 27.)

The '553 patent describes the technical problems faced at the time, and its solution to those technical problems. Specifically, it discloses prior-art methods of Over-the-Air Parameter Administration (OTAPA), "which allows changing of specific parameters of the mobile station by wireless communication." ('553 patent at 1:36-41.) But while OTAPA includes "an authentication procedure for a communication network . . . such that a mobile station may confirm whether the network is correct, . . . an authentication procedure for a mobile station is not included." ('553 patent at 1:42-46.) This one-way OTAPA authentication left mobile stations vulnerable to unauthorized persons "illegally chang[ing] the specific parameters of the mobile station and receiv[ing] illegal communication service, thereby affecting the overall service to the authorized users, i.e. mobile station, of a network." ('553 patent at 1:46-50.) And while a separate authentication process could be performed on mobile stations before the OTAPA process began, that was inefficient and taxed the network:

> Although the network may first perform an authentication procedure of a mobile station[] before the OTAPA process, if the authentication procedure of the mobile station is performed independently, the entire OTAPA process will be elongated. Moreover, a separate authentication procedure must be added, thereby increasing the load in a communication network.

('553 patent at 1:53-59.)

As set forth in the pleadings here and in the '553 patent itself, the inventions of the '553 patent overcame these disadvantages by: (1) providing for mutual authentication between the mobile station and the network such that mobile station operational parameters could not be changed by unauthorized persons, and (2) maintaining the same number of operational parameter updating steps with the claimed two-way mutual authentication procedure as were used in conventional one-way authentication procedures. (D.I. 1 at ¶ 28; '553 patent at 2:3-10.)

## IV.    ARGUMENT

### A.    Procedural Standards

Under Federal Rule of Civil Procedure 12(b)(6) a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  The question resolved on a motion to dismiss under Rule 12(b)(6) is "whether [the] complaint was sufficient to cross the federal court's threshold"—the relevant question is *not* whether the plaintiff will ultimately prevail.  *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011).  For purposes of ruling on a Rule 12(b)(6) motion, the Court must "accept as true all material allegations of the complaint."  *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).  A Court may grant a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief."  *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000).

### B.    Section 101 Standards

35 U.S.C. § 101 states that claims covering "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" are patent eligible.  There are judicially recognized exceptions, which include laws of nature, natural phenomena, and abstract ideas.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).  In reviewing these exceptions, the Supreme Court has recognized that "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id*. at 2354.  Accordingly, courts should "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id*. at 2354.

*Alice* sets forth a two-step analysis for determining whether a claim is patent-eligible. *Alice*, 134 S. Ct. at 2354.  "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 134 S. Ct. at 2350.  Second, if the claim is directed to an abstract idea, the Court should "determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. at 2355 (quoting *Mayo Collaborative v. Prometheus Labs.*, 132 S. Ct. 1289, 1296-97 (2012)).  This involves looking at the claim elements both individually and "as an ordered combination." *Id*. at 2350.  Even a claim directed to a patent-ineligible concept may be patentable if it includes "unconventional steps" that "confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300.

As the Federal Circuit recently held, ***it is improper to dismiss patent claims under Section 101 as a matter of law when there are underlying factual disputes***. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).  Notably, the Federal Circuit further held, "***whether***

*something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination*." *Berkheimer*, 881 F.3d at 1369.[3]

### C.    Claim 1 of the '553 Patent Recites Eligible Subject Matter

As the Supreme Court warned in *Alice*, "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S. Ct. at 2354. Accordingly, courts should "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id*. at 2354. Boiling the claims down to Defendants' proposed abstract idea does exactly what the Supreme Court explicitly warned against: "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed, Cir. 2016). Indeed, the Federal Circuit has repeatedly cautioned against the type of overgeneralization that Defendants commit here. "We have previously cautioned that courts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016).

Ignoring these precautions, Defendants have constructed a purported "abstract idea" for the '553 patent that is divorced from the claim language and the scope of the invention. The proposed abstraction ignores numerous specific elements of claim 1 that makes it inventive, including the ordered combination of elements recited in this claim.

#### 1.    Claim 1 of the '553 Patent Is Patent-Eligible Under Step One of the *Alice* Standard

##### a.    Defendants' Arguments Fail as a Matter of Law Because They Require the Court to Interpret Disputed Facts in a Light Most Favorable to Defendants

---

[3] Unless otherwise indicated, all emphasis in this Brief has been added.

6

Defendants' assertion that "claim 1 [of the '553 patent] is limited to the abstract idea of using random numbers to mutually authenticate a transmission" ignores the actual elements recited in the claims. (D.I. 9 at 2.) Defendants derive this abstract idea the only way they can: by mischaracterizing factual content from the specification and prior art to justify their impermissibly "stripping away" essential claim elements. (D.I. 9 at 2.) Without the benefit of their faulty factual inferences, however, Defendants' arguments fail.

"The crucial question," according to Defendants, who cite no case law in support of this curious framing, "is the extent to which the specification admits that all of the technical details of the claims were already conventional." (D.I. 9 at 9.) But what the specification "admits" about the "technical details of the claims" depends on how a skilled artisan at the time of the invention would interpret the specification. And whether a skilled artisan would interpret those "technical details" to be "well-understood, routine, and conventional . . . is a factual determination." *Berkheimer*, 881 F.3d at 1369.

At the motion to dismiss stage, when the Court must view all facts in a light most favorable to Aegis 11, it is not appropriate to decide such factual issues, let alone to decide them in Defendants' favor. *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000). The Court should deny Defendants' Motion for this reason alone.

Defendants' analysis of the specification, however, also fails on the merits because Defendants arguments rest on the incorrect assumption that subject matter is "well-known," "conventional," or "standardized" because it is merely *discussed* in the specification:

> In the context of the '553 Patent's *discussion* of the prior art, and after stripping away *the already known (i.e., admittedly conventional technology)*, the purported novelty disclosed in claim 1 is simply generating random numbers for this two-way authentication. That's it—there is nothing more to this claim.

7

(D.I. 9 at 2.)  But the Federal Circuit has explicitly held that, "The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1369.  Thus, even Defendants' cited evidence is insufficient to demonstrate what they claim it shows.

For instance, Defendants focus heavily on the OTAPA procedures discussed in the background section of the specification, characterizing these procedures as "known" and "standardized" throughout their Motion.  (*See*, *e.g.*, D.I. 9 at 7, 10.)  But the IS-725-A Standard disclosed in the '553 patent specification is dated more than one month ***after*** the March 3, 1999 priority date of the '553 patent.  (*Compare* '553 patent at cover page *with* '553 patent at 1:38-39 ("The OTAPA is disclosed in IS-725-A, pp. 3-75 to 3-78, Apr. 13, 1999").)  Thus, the IS-725-A Standard does not qualify as prior art.  Moreover, the post-priority-date standardization of a ***precursor*** to the claimed inventions of the '553 patent could be interpreted as demonstrating the inventiveness of the '553 patent, rather than any alleged well-known, routine, or conventional nature of the features of claim 1.  Defendants simply chose to interpret these factual disclosures in a light most favorable to their arguments.

Moreover, the fact that OTAPA is disclosed in a PCT patent application filed less than a year before and published less than six months before the '553 patent's earliest priority date ('553 patent at 1:36-41; D.I. 9 at Ex. B (PCT application cover page)), suggests that OTAPA was new and innovative as of the '553 patent priority date, not "known and standard," as Defendants argue.  (Ex. 1, Sharony Decl. at ¶ 18.[4])  The '553 patent specification even explicitly contrasts the more recently developed OTAPA method, "which allows changing of specific parameters of

---

[4] "Ex. 1, Sharony Decl." refers to the Declaration of Dr. Jacob Sharony in Support of Plaintiff Aegis 11 S.A.'s Opposition to Defendants' Partial Motion to Dismiss for Failure to State a Claim, submitted herewith as Exhibit 1.

the mobile station by wireless communication," with earlier methods of updating "specific functions on a network" and "chang[ing] specific parameters in a mobile station," further suggesting OTAPA was not well-known, routine, and conventional. (*Compare* '553 patent at 1:36-41 *with* '553 patent at 1:24-35; Ex. 1, Sharony Decl. at ¶ 18.)

The specification uses the term "conventional" only twice, both times in the phrase "the conventional procedure":

- "The present method allows a mutual authentication while maintaining the updating procedure of the mobile station operational parameters in ***the conventional procedure***."  (D.I. 1 at Ex. A (abstract).)

- "A further object of the present invention is to allow a management which can perform a mutual authentication between a mobile station and a network while maintaining the same number of mobile station operational parameter updating procedure [sic] as in ***the conventional procedure***."  (D.I. 1 at Ex. A (2:6-11).)

Here "the conventional procedure" refers to a one-way procedure for updating mobile station operational parameters, and each statement above is intended to convey that the claimed methods involving mutual authentication are as efficient as the one-way "conventional procedure."  (Ex. 1, Sharony Decl. at ¶ 20.)

But the specification discloses two possibilities for what this one-way "conventional procedure" might be: (1) one of the pre-OTAPA procedures ('553 patent at 1:30-35), also described as "OTASP" (D.I. 9 at Ex. B (p. 8:29-31)); and (2) one of the OTAPA procedures ('553 patent at 1:36-41).  The above excerpts do not specify which one is being discussed.  (Ex. 1, Sharony Decl. at ¶ 20.)  Interpreting "the conventional procedure" to mean a pre-OTAPA (e.g., OTASP) procedure favors Aegis 11, while interpreting this phrase to mean an OTAPA procedure favors Defendants.  Despite that all inferences must be drawn in Aegis 11's favor at the motion to dismiss stage, *Maio*, 221 F.3d at 481-82, Defendants assume "the conventional procedure" is OTAPA.  (D.I. 9 at 10.)  This is impermissible.

9

Defendants' characterizations of the specification and prior art, and in particular of OTAPA, are thus an improper attempt to bridge the gap between the specification's factual disclosures, and what a skilled artisan would consider to be "well-understood, routine, and conventional" at the time of the invention. Defendants are not entitled to such favorable factual inferences at this stage of the case, *Berkheimer*, 881 F.3d at 1369, *Maio*, 221 F.3d at 481-82, and Defendants' Motion should be denied accordingly.

          **b.**        **Interpreted Correctly, Claim 1 of the '553 Patent Is Not Directed to an Abstract Idea**

35 U.S.C. § 101 states that patent claims covering "any new and useful ***process***, machine, manufacture, or composition of matter, ***or any new and useful improvement thereof***" are patent eligible. Claim 1 of the '553 patent recites a new and useful improvement upon a useful process, and this improvement comprises an ordered combination of steps and elements that pertain to specific applications in a particular environment:

> 1. A method of managing mobile station operational parameters in a wireless communication network comprising:
>
> transmitting a message from a network to a mobile station to indicate an initiation of an update of the mobile station operational parameters; and
>
> updating the mobile station operational parameters after completing a mutual authentication between the mobile station and the network, wherein the mutual authentication comprises each of an authentication of the mobile station by the network and an authentication of the network by the mobile station, and wherein the mutual authentication is performed by generating at least one random number by each of the network and the mobile station.

The first step in the Supreme Court's patent-eligibility test is "determin[ing] whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. This inquiry "cannot simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon . . . ." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d

10

1327, 1335 (Fed. Cir. 2016) (citing *Mayo*, 132 S. Ct. at 1239). "Rather, the 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character **as a whole** is directed to excluded subject matter.'" *Id.* (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).

Read as a whole, without improperly ignoring select limitations, claim 1 is directed to managing a specific type of protocol (operation parameters) in a specific type of device (a mobile station) in a specific environment (a wireless communication network) in a manner involving the then-novel process of mutual authentication, which is described at length throughout the specification. Claim 1 is therefore not directed to an abstract idea but is instead "directed to a non-abstract improvement in an existing technological process"—namely, an efficient and more secure improvement to the process of wirelessly managing mobile station operational parameters on a wireless network. *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, No. 2018-1863, 2019 U.S. App. LEXIS 34075 at *17 (Fed. Cir. Nov. 15, 2019). That claim 1 recites the generation of random numbers in one limitation does not alter the nature of claim 1 **as a whole**. (*See* D.I. 9 at 13-14 (discussing factual allegations outside the scope of the Complaint and '553 patent regarding the historic use of random numbers in encryption).)

Defendants' cited case law does not change the analysis of claim 1, or the result that claim 1 is directed to a non-abstract improvement to a specific useful process. (D.I. 9 at 11-14.)

For example, *Prism Technologies LLC v. T-Mobile USA, Inc.*, 696 Fed. Appx. 1014 (Fed. Cir. 2017), which Defendants emphasize, is a non-precedential opinion analyzing, in relevant part, a district court's final (i.e., post-trial) decision of patent-ineligibility. *Id.* at 1015. Aside from the opinion's lack of precedential weight, and that the underlying district court had the opportunity to explore relevant underlying factual issues before rendering its opinion, the claims

11

at issue in *Prism* are readily distinguishable from claim 1 of the '553 patent. Specifically, the challenged claims in *Prism* were "directed to the abstract idea of controlling access to resources," *id.* at 1017, while claim 1 of the '553 patent is directed to a specific improvement on a specific useful process relating to a specific device in a specific environment. And while the ordered combination of elements in claim 1 of the '553 patent produces better results than the prior art (discussed further below), the combination of claim elements in *Prism* "recited no more than the sort of 'perfectly conventional' generic computer components employed in a customary manner" that the Federal Circuit has repeatedly held patent ineligible. *Id.* at 1018.

Defendants offer that, "In *Prism*, the Federal Circuit found ineligible claims relating to computer security and, more particularly, authentication of identity data." (D.I. 9 at 12.) But claim 1 of the '553 patent is limited to wireless mobile devices operating on a wireless network and is not applicable to all computers operating in all environments. Regardless, "Improving security . . . can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem." *Anacora Techs. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018). Claim 1 of the '553 patent addresses security and network reliability issues specific to updating operational parameters of mobile stations in wireless networks ('553 patent at 1:46-52) and does so in a way that not only solves these issues but increases authentication efficiency as well ('553 patent at 2:3-10). *Prism* is therefore inapposite.

The claims at issue in *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017), are even less relevant to the '553 patent than the claims in *Prism*. In *Secured Mail*, the challenged claims related to methods of "verifying mail identification data" and "providing electronic data to a recipient of a mail object." *Id.* at 908. These methods were

performed by "a processor," "a reception device," or "a computer" on "a network." *Id.* In addition to not limiting the methods to particular devices in particular environments, "The claims of the three sets of [challenged] patents [were] not limited by rules or steps that establish how the focus of the methods is achieved." *Secured Mail*, 873 F.3d at 911. Claim 1 of the '553 patent, by contrast, recites a specific device (mobile station) operating in a specific environment (wireless network), and the claimed method pertains to achieving something specific (managing the operational parameters of the mobile station) via specific steps, including the novel mutual authentication process described throughout the specification. The claims in *Secured Mail* are therefore an inappropriate comparator for claim 1 of the '553 patent.

For the reasons set forth above, Defendants' allegation that claim 1 is directed to an abstract idea should be rejected, and Defendants' Motion denied accordingly.

### 2. To the Extent Step 2 of the *Alice* Test Is Necessary, Claim 1 of the '553 Patent Encompasses an Inventive Concept

To the extent the Court believes claim 1 of the '553 patent is directed to an abstract idea, claim 1 encompasses an inventive concept and is therefore patent eligible.

Step two of the *Alice* inquiry involves "determin[ing] whether the additional elements [aside from the abstract idea] 'transform the nature of the claim' into a patent-eligible application." *Alice* 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1296-97). This entails looking at the claim elements both individually and "as an ordered combination." *Id*. at 2350. Even a claim directed to a patent-ineligible concept may be patentable if it includes "unconventional steps" that "confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300. *Alice* step two applies only if the Court determines claim 1 of the '553 patent is directed to an abstract idea. *Enfish, LLC*, 822 F.3d at 1339 ("Because the

13

claims are not directed to an abstract idea under step one of the *Alice* analysis, we do not need to proceed to step two of that analysis.")

Claim 1 is confined to a particular, useful application in a specific environment: efficiently and securely managing the operational parameters of a mobile station over a wireless network via mutual authentication, which was an unconventional step at the time of the invention. (D.I. 1 at ¶¶ 28; '553 patent at 2:3-10; Ex. 1, Sharony Decl. at ¶ 20.) Importantly, the specification contrasts the claim term "mutual authentication," a two-way authentication accomplished with the efficiency of a one-way process (*see* '553 patent at 2:3-10), with the process of sequentially performing two one-way authentications via OTAPA or conventional methods (*see* '553 patent at 1:53-59). (Ex. 1, Sharony Decl. at ¶ 20.) Indeed, much of the '553 patent specification is dedicated to describing what "mutual authentication" is and how it is performed. Thus, a skilled artisan at the time of the invention would understand the claim term "mutual authentication" to encompass the efficient two-way processes described throughout the specification, and would not merely interpret "mutual authentication" to mean two separate one-way authentications taking place. (Ex. 1, Sharony Decl. at ¶ 20.)

Furthermore, the particular application recited via the method of claim 1 is both more secure and more efficient than prior art methods of wirelessly updating mobile station operational parameters. (D.I. 1 at ¶ 28; '553 patent at 2:1-10; Ex. 1, Sharony Decl. at ¶¶ 20-24.) And the method of claim 1 helps resolve network reliability issues stemming from prior art methods as well. ('553 patent at 1:46-52; Ex. 1, Sharony Decl. at ¶¶ 20-24.) Hence, claim 1 of the '553 patent embodies an inventive step.

Defendants attempt to dismiss these improvements by ignoring features of claim 1 they incorrectly suggest are well-understood, routine, and conventional. (D.I. 9 at 15-16.) As

discussed above in Section IV.D.1., Defendants' positions hinge on disputed factual allegations that are inappropriate at the motion to dismiss stage. And while most of Defendants' factual allegations are merely subject to multiple interpretations, some in Defendants' "inventive concept" argument are flat out wrong.

For example, Defendants allege that "the '553 Patent itself . . . admits that the *combination* of authentication for a communication network, wireless over the air parameter administration, and changing of specific parameters by wireless communications is conventional." (D.I. 9 at 15 (emphasis in original).) To support this allegation, Defendants cite a description of the claimed invention from the "Summary of the Invention" section of the '553 patent, at 2:35-45, which does not mention prior art whatsoever, and an excerpt from PCT application WO 98/41044 (p. 8, ln. 27 – p. 9, ln. 3) that describes the ***inventiveness*** of OTAPA:

> In contrast to previously implemented methodologies for modifying information stored within a mobile station, ***the OTAPA mechanism of the present invention*** is a network-initiated programming procedure. ***The OTAPA programming procedure of the present invention*** uses an existing over-the-air programming protocol that supports a previously implemented OTASP feature to provide a very different network-initiated programming procedure. Furthermore, ***the present invention implements a mobile station parameter administration security mechanism (SPASM)*** that prevents an unauthorized network-initiated over-the-air programming from being performed. In the event that an MS has a plurality of NAMs, each NAM in that MS is secured separately using the SPASM protocol.

No reasonable person could read these excerpts as supporting Defendants allegation that OTAPA was conventional as of the '553 patent priority date. Not even by reading these excerpts in a light most favorable to Defendants could one arrive at that conclusion.

Because claim 1 of the '553 patent recites a particular, useful application employing an unconventional step in a specific environment, and because Defendants allegations to the contrary fail for the reasons set forth above, claim 1 embodies an inventive step and is patent eligible. Defendants' Motion should therefore be denied.

15

## V.      CONCLUSION

For the reasons set forth above, Defendants' Motion should be denied in its entirety.


Dated: November 20, 2019                    DEVLIN LAW FIRM LLC

                                            /s/ *Timothy Devlin*
                                            Timothy Devlin (DE 4241)
                                            1526 Gilpin Ave.
                                            Wilmington, DE  19806
                                            (302)-449-9010
                                            tdevlin@devlinlawfirm.com
                                            *Counsel for Plaintiff Aegis 11 S.A.*

16

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic filing on November 20, 2019.

/s/ Timothy Devlin
Timothy Devlin