## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AEGIS 11 S.A., | |
| Plaintiff, | **Civil Action No. 1:19-cv-01161-RGA** |
| v. | |
| BELKIN INTERNATIONAL, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |
| AEGIS 11 S.A., | |
| Plaintiff, | |
| v. | **Civil Action No. 1:19-cv-01162-RGA** |
| NETGEAR, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |
| AEGIS 11 S.A., | |
| Plaintiff, | |
| v. | **Civil Action No. 1:19-cv-01163-RGA** |
| ROKU, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |

**PLAINTIFF AEGIS 11 S.A.'S OBJECTIONS TO THE REPORT AND RECOMMENDATION ISSUED BY MAGISTRATE JUDGE SHERRY R. FALLON ON JULY 20, 2020**

/s/ Timothy Devlin
Timothy Devlin (#4241)
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE  19801

Telephone: (302) 449-9010
tdevlin@devlinlawfirm.com

*Attorneys for Plaintiff Aegis 11 S.A.*

DATED:        August 3, 2020

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.    OBJECTIONS AND ARGUMENT ....................................................................... 1

    A.    The Report Should Be Rejected Because It Makes Multiple, Compounding, and Fatal Legal and Factual Errors in Analyzing *Alice* Step 1 ................................................... 1

        1.    The Report Adopts Defendants' Incorrect and Unsupported Methodology for Conducting the *Alice* Step 1 Analysis, Which Mandates Rejection ...................................... 1

        2.    The Report Improperly Places the Burden on Non-Movant Plaintiff to Prove Inventiveness at *Alice* Step 1 ............................................................................. 4

        3.    The Report Draws Multiple Factual Inferences in Defendants' Favor, Which Is Improper at the Motion to Dismiss Stage ............................................................... 5

        4.    The Report Fails to Identify and Resolve Claim Construction Issues That Need to Be Resolved before Patent-Eligibility Can Be Determined .......................................... 8

    B.    The Report Downplays Disputed Factual Issues in Analyzing *Alice* Step 2 That Compounds Its Errors ........................................................................................... 9

III.    CONCLUSION..................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ................................................. 1, 3

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) ................................................. 1, 5, 8, 9, 10

*CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358 (Fed. Cir. 2020) ........................................ 2, 5

*Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352 (Fed. Cir. 2017) ......... 9

*Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) ..................................... 2

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) ................................................ 3

*Front Row Techs., LLC v. NBA Media Ventures, LLC*, 204 F. Supp. 3d 1190 (D.N.M. 2016) ...... 8

*Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158 (Fed. Cir. 2004) ........................................................ 8

*Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000) ...................................................................... 1, 5

*Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S.Ct. (2012) ....................................... 3

*Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014 (Fed. Cir. 2017) ............................ 3

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017) ......................... 4

*Skinner v. Switzer*, 562 U.S. 521 (2011) ........................................................................................ 5

*Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004) ............................................................................... 5

*Taberer v. Armstrong World Indus. Inc.*, 954 F.2d 888 (3d Cir. 1992) ......................................... 1

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020) ................................... 9

**Statutes**

35 U.S.C. § 101 ............................................................................................................................... 1

**Rules**

FED. R. CIV. P. 12(d) ....................................................................................................................... 9

FED. R. CIV. P. 72(b)(2) .................................................................................................................. 1

ii

FED. R. CIV. P. 72(b)(3)..................................................................................................... 1

## I.     INTRODUCTION

Plaintiff Aegis 11 S.A. ("Plaintiff" or "Aegis 11") hereby files the following objections to the Report and Recommendation ("Report") (D.I. 21 ("Rep."))[1] regarding Defendants Belkin International, Inc., Netgear, Inc., and Roku, Inc. (collectively, "Defendants") Motion to Dismiss. Under Rule 72(b), the Court reviews a magistrate judge's report and recommendation *de novo*. FED. R. CIV. P. 72(b)(2); *Taberer v. Armstrong World Indus. Inc.*, 954 F.2d 888, 904 (3d Cir. 1992). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3).

## II.     OBJECTIONS AND ARGUMENT

### A.     The Report Should Be Rejected Because It Makes Multiple, Compounding, and Fatal Legal and Factual Errors in Analyzing *Alice* Step 1

On a motion to dismiss under Rule 12(b)(6), Defendants bear the burden of proving that Plaintiff failed to state a claim upon which relief can be granted. *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000). To satisfy this burden in the context of a patent subject-matter eligibility challenge under 35 U.S.C. § 101, Defendants are required to show: (1) that the challenged claim as a whole is directed to an abstract idea, and (2) ***only if and after*** the first step is satisfied, that there is nothing inventive in the claim that overcomes the abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2350-55 (2014); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).

#### 1.     The Report Adopts Defendants' Incorrect and Unsupported Methodology for Conducting the *Alice* Step 1 Analysis, Which Mandates Rejection

---

[1] As in the Report, all references to D.I. numbers herein refer to the docket in C.A. No. 19-1161-RGA, unless otherwise noted.

1

Defendants premised their *Alice* step 1 analysis on an erroneous legal standard: that an abstract idea can be identified by simply "stripping away" claim limitations that are allegedly well-understood, routine, or conventional. (Opening Br. at 2, 9-11.) Defendants even went so far as to state, "The crucial question [under *Alice* step 1], therefore, is the extent to which the specification admits that all of the technical details of the claims were already conventional." (Opening Br. at 9.) The Report adopts this improper approach. (Rep. at 6-11.)

This faulty approach contradicts longstanding Federal Circuit precedent. "The analysis under *Alice* step one is whether the claims as a whole are 'directed to' an abstract idea, regardless of whether the prior art demonstrates that the idea or other aspects of the claim are known, unknown, conventional, unconventional, routine, or not routine." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372 (Fed. Cir. 2020). Indeed, not a single case cited by the Report suggests stripping away "well-known, routine, or conventional" claim limitations at step 1 of the *Alice* test.

Not until *Alice* step 2—**after** it has already been determined that the claim **as a whole** is directed to an abstract idea—may the Court turn to *Alice* step 2. *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018) ("If the claims are not directed to a patent-ineligible concept under *Alice* step 1, 'the claims satisfy § 101 and we need not proceed to the second step.'"). Reversing the process by ignoring claim limitations at *Alice* step 1 that are allegedly "well-known, routine, or conventional" constitutes legal error. *CardioNet*, 955 F.3d at 1372; *Data Engine Techs.*, 906 F.3d at 1007. Yet that is exactly what Defendants and the Report do. (Opening Br. at 2, 9-11; Rep. at 6-11.)

A side-by-side comparison of the actual language of claim 1 and Defendants' and the Report's formulation of the alleged abstract idea demonstrates how grossly oversimplified the alleged abstract idea is relative to the specifics of the challenged claim:

| Claim 1 | Alleged Abstract Idea |
|---|---|
| A method of managing mobile station operational parameters in a wireless communication network comprising: | |
| transmitting a message from a network to a mobile station to indicate an initiation of an update of the mobile station operational parameters; and | |
| updating the mobile station operational parameters after completing a mutual authentication between the mobile station and the network, wherein the mutual authentication comprises each of an authentication of the mobile station by the network and an authentication of the network by the mobile station, and **wherein the mutual authentication is performed by generating at least one random number by each of the network and the mobile station**. | "generating and using random numbers for the purpose of mutual authentication." (Rep. at 7; Opening Br. at 9.) |

The Report justifies its use of Defendants' alleged abstract idea by explaining, "Defendants' distillation of the abstract idea closely tracks the claim language describing the mutual authentication process." (Rep. at 7.) But as shown above "Defendants' distillation" only tracks one partial limitation among many—and ignores all the rest. As a result, the Report improperly focuses on whether claim 1 merely **involves** an abstract concept. *See Alice,* 134 S. Ct. at 2354 ("Thus, an invention is not rendered ineligible for patent simply because it **involves** an abstract concept"); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (citing *Mayo*, 132 S. Ct. at 1239) (stating that the *Alice* step 1 inquiry "cannot simply ask whether the claims **involve** a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon . . . .").[2] This is legal error.

The Report relies on *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014 (Fed. Cir. 2017), which Defendants emphasized, to support its *Alice* step 1 conclusion. (Rep. at 11.)

---

[2] Unless otherwise indicated, all emphasis has been added in these Objections.

3

But *Prism* is a non-precedential opinion analyzing a district court's ***post-trial*** determination of patent ineligibility based on a complete factual record. *Id.* at 1015. *Prism* is therefore inapplicable here. (D.I. 17 ("Opp.") at 11-12.) The Report dismisses this, noting that the district court in *Prism* "had no occasion to consider patent eligibility at the pleading stage" since the pleadings were filed before the Supreme Court's *Alice* decision. (Rep. at 12 n.5.) But the question decided by the Federal Circuit in *Prism*—whether a post-trial determination of patent ineligibility was correctly made based on a full record and without having to draw inferences in Plaintiff's favor or having to account for the burdens inherent in deciding a motion to dismiss— was fundamentally a different one than the Court must decide here. Thus, *Prism* is inapposite.

Similarly, the Report cites *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017), to draw parallels between the rejected claims there to the alleged abstract idea here of "generating and using random numbers for the purpose of mutual authentication." (Rep. at 13.) But as explained at length above, the Report improperly ignored the claim as a whole in formulating the abstract idea here. Thus, the Report's comparison is improper. Aegis distinguished this case in its Opposition (Opp. at 12-13), but the Report ignores this distinction.

### 2. The Report Improperly Places the Burden on Non-Movant Plaintiff to Prove Inventiveness at *Alice* Step 1

After adopting "Defendants' distillation," as set forth above, the Report then places the burden on non-movant Plaintiff to demonstrate the inventiveness of claim 1 at *Alice* step 1. (Rep. at 8-11.) The "inventive step" analysis is the province of *Alice* step 2, not step 1. By analyzing Plaintiff's *Alice* step 1 arguments via the "inventive step" lens of *Alice* step 2, the Report impermissibly places the burden on Plaintiff at *Alice* step 1 to prove something Plaintiff was neither trying to nor required to demonstrate—the inventiveness of claim 1 relative to the prior art—and this constitutes legal error.

4

The question at *Alice* step 1 is whether the challenged claim is directed to a statutorily defined category of patent-eligible subject matter, or whether the claim is directed to an impermissible abstract idea. *CardioNet*, 955 F.3d at 1372.  Plaintiff pointed out that claim 1 of the '553 patent is directed to a statutorily defined category of patent-eligible subject matter, namely "a new and useful improvement upon a useful process." (Opp. at 10.) And Plaintiff noted that the process claimed in claim 1 is not abstract because "claim 1 is directed to managing a specific type of protocol (operational parameters) in a specific type of device (a mobile station) in a specific environment (a wireless communication network) in a manner involving the then-novel process of mutual authentication, which is described at length throughout the specification." (Opp. at 11.) Plaintiff had no obligation to, and indeed did not, argue the inventiveness of claim 1 relative to the prior art in Plaintiff's *Alice* step 1 analysis.  The Report erred in placing the burden on Plaintiff to do so, and it should therefore be rejected.

### 3. The Report Draws Multiple Factual Inferences in Defendants' Favor, Which Is Improper at the Motion to Dismiss Stage

In conducting the *Alice* step 1 analysis, the Report also draws multiple factual inferences in Defendants' favor, which is improper at this stage. *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011); *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Maio*, 221 F.3d at 481-82.

It is well established that "whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer*, 881 F.3d at 1369. The Federal Circuit has also explicitly held, "The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Id*. at 1369.  Thus, merely pointing to the disclosure of some claim features in the prior art is insufficient to demonstrate that the cited features are "well-known, routine, and conventional."  But Defendants did exactly that, (*see* Opening Br. 9-11), and the Report follows

5

suit in applying this errant standard.  (Rep. at 7-10.)  Even worse, in doing so, the Report ignores record evidence in favor of Aegis, and instead draws multiple factual inferences in Defendants' favor.

For example, Defendants argued that according to the specification, the "technical details" of the claim (i.e., claim limitations of "transmitting a message from a network to a mobile station to indicate an initiation of an update of the mobile station operational parameters" and "updating the mobile station operational parameters" among others) were merely "well-understood, routine, or conventional."  (Opening Br. at 9.)  Specifically, Defendants asserted that these "technical details" were taught by the Over-The-Air Parameter Administration (OTAPA) process that the specification allegedly "admits" was known and conventional.  (Opening Br. at 9-11.)  But to support these arguments, Defendants merely pointed to the ***disclosure*** of the "technical details" in the alleged prior art, which is insufficient under *Berkheimer*.  (Opening Br. at 9-11; Opp. at 6-10.)  Nothing in the record characterizes these features as "conventional" or "routine." (*Id.*)

In its Opposition, Plaintiff noted that: (1) OTAPA was first disclosed in a PCT application published less than six months before the '553 patent's priority date; and (2) the subsequent IS-725-A technical standard mentioned in the '553 patent specification, which eventually standardized the OTAPA process, is dated more than one month ***after*** the March 3, 1999 priority date of the '553 patent and therefore does not qualify as prior art at all.  The timing of both these documents suggests that OTAPA was ***not*** routine or conventional at the time of the invention.  (Opp. at 8.)

The Complaint also makes clear that the invention is not just some implementation of OTAPA, but instead an improvement over it.  The Complaint describes resolving technical problems "related to the authentication procedure at a mobile station ***before*** an over-the-air [i.e.,

6

OTAPA] update can be run." (D.I. 1 at ¶ 29.)  Paragraph 29 of the Complaint then cites column 1:53-59 of the '553 patent specification, which further describes the problems with OTAPA stemming from procedures performed *before* OTAPA is performed.  Thus, both the Complaint and the '553 specification explain how the mere existence of OTAPA fails to render the claimed features disclosed at all, much less "conventional."

Rather than deny Defendants' Motion in view of these clear factual disputes, the Report rationalizes (mostly in footnotes) why these factual issues should be weighed in Defendants' favor.  For instance, the Report asserts that "Plaintiff's argument [regarding the IS-725-A standard] is contradicted by its own pleading which expressly characterizes the OTAPA process as prior art."  (Rep. at 8 n.2 (citing D.I. 1 at ¶ 29).)  This assertion first confuses the two references.  As explained above, OTAPA was first disclosed in a PCT application, which *is* prior art (but only just, suggesting the absence of "conventionality"), while the patent also references the IS-725-A standard, which is *not* prior art.  (Opp. at 8.)

The Report goes on to say, "Regardless, Defendants correctly point out that claim 1 of the '553 patent 'is not limited to mutual authentication using OTAPA or any other manner of generating random numbers,' and the issue of whether OTAPA is prior art is therefore 'neither outcome-determinative nor a fact issue that need[s] [to] be resolved at this stage.'" (Rep. at 8 n.2 (citing D.I. 18 at 2).)  This simply ignores the entire false premise on which both Defendants' argument and the Report's analysis were constructed.  Defendants premised their *Alice* step 1 arguments on the assertion that "each step recited in claim 1 comprises nothing more than a generic, well-known process."  (Opening Br. at 9-10.)  So, to the extent it is proper to adopt Defendants' unsupported *Alice* step 1 methodology as the Report does (it is not), Defendants' failure to meet their burden to demonstrate that OTAPA was "generic" or "well-known" *is* outcome-determinative.

7

Indeed, the Report goes out of its way to find counter-evidence supporting Defendants' assertion of conventionality, citing a District of New Mexico case that neither side cited during briefing to support the Report's ***factual*** conclusion that "a wireless communication network is generic and conventional, not specific and concrete." (Rep. at 11 n.4 (citing *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 204 F. Supp. 3d 1190, 1278 (D.N.M. 2016).) Worse yet, the Report conducts this independent factual research in Defendants' favor while expressly declining to consider the factual declaration of Plaintiff's expert, Dr. Jacob Sharony (Rep. at 8 n.2), despite the Court's clear discretion under the Rules to consider such testimony. FED. R. CIV. P. 12(d). This is improper on a Section 101 motion. *Berkheimer*, 881 F.3d at 1369.

### 4. The Report Fails to Identify and Resolve Claim Construction Issues That Need to Be Resolved before Patent-Eligibility Can Be Determined

The key claim term "mutual authentication," which the Report concedes is "the focus of the claimed advance" of claim 1 of the '553 patent (Rep. at 7), is not a plain-English term and is not the equivalent of two one-way OTAPA authentications. (Opp. at 14; Rep. at 3.) "Mutual authentication" is therefore a term of art that must be interpreted in light the intrinsic record. *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1164 (Fed. Cir. 2004) ("Where a claim term has no ordinary and customary meaning, a court ***must*** resort to the remaining intrinsic evidence—the written description and the prosecution history—to obtain the meaning of that term."). Here, claim 1 ***may*** in fact be "limited to mutual authentication using OTAPA," contrary to the Report's unsupported conclusion otherwise. (Rep. at 8 n.2, 10, 14.) As Plaintiff explained in its Opposition, "a skilled artisan at the time of the inventions would understand the claim term 'mutual authentication' to encompass the efficient two-way process described throughout the specification, and would not merely interpret 'mutual authentication' to mean two separate one-way authentications taking place." (Opp. at 14.) The Report chooses to bypass interpreting this

key claim term in evaluating the patent subject-matter eligibility of claim 1, asserting simply that claim 1 did not "articulat[e] how to achieve the stated goal of mutual authentication in a non-abstract way."  (Rep. at 9.)

In *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020), however, the Federal Circuit recently held that, "Claims need not articulate the advantages of the claimed combinations to be eligible." *Id.* at 1309.  The Report attempts to distinguish *Uniloc* on the basis that "the alleged improvements identified in the specification of the '553 patent are expressly tied to the OTAPA process, while the language of claim 1 is not restricted to any particular apparatus or protocol."  (Rep. at 14.)  But this merely begs the question of what "mutual authentication" means in view of the specification.  The Report erred in ignoring this claim construction issue.

### B.    The Report Downplays Disputed Factual Issues in Analyzing *Alice* Step 2 That Compounds Its Errors

The Report's holding that "claim 1 of the '553 patent lacks an inventive concept that would otherwise render it patent eligible" separately warrants rejection.  For instance, the Report errs in summarily rejecting the declaration of Plaintiff's expert Dr. Jacob Sharony (the "Sharony Declaration") regarding the inventive concepts of the asserted claims as "matters outside the pleadings."  (Rep. at 8 n.2.)  As Plaintiff explained in its Opposition, the Federal Circuit held in *Berkheimer* that "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination."  *Berkheimer*, 881 F.3d at 1369. While *Berkheimer* began as a summary judgment motion, the proposition is equally applicable to motions that are initially brought under Rule 12(b)(6).

Indeed, the Federal Circuit has indicated that it would be receptive to the use of expert declarations at the Rule 12(b)(6) stage if they assist with the patent-eligibility analysis.  In

9

*Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017), for example, the Federal Circuit affirmed the district court's grant of a motion to dismiss under Section 101, in part because "Cleveland Clinic provided no proposed construction of any terms *or proposed expert testimony that would change the § 101 analysis*." *Id.* at 1360.

Even if the Court does not rely on the Sharony Declaration to make any findings of fact at this time, Dr. Sharony's factual assertions merely confirm the existence of a factual *dispute* as to those matters. As the Federal Circuit clarified in *Berkheimer*, the presence of a factual dispute alone is sufficient for this Court to deny the motion to dismiss. *Berkheimer*, 881 F.3d at 1369-70. Here, Dr. Sharony's Declaration establishes that each asserted claim of the '553 patent recites many unconventional features, each of which alone or as an ordered combination support patentability under *Alice* step two. (*See* D.I. 17-1.) The Report, however, ignores this evidence in *rendering its own judgment of the facts*, asserting that "it will be difficult, if not impossible, for a patentee to show a genuine dispute of fact." (Rep. at 8 n.2.)

## III.    CONCLUSION

For the foregoing reasons, Aegis 11 respectfully request this Court reject the July 20, 2020 Report and Recommendations and deny Defendants' Motion to Dismiss.

Dated:  August 3, 2020

_s/ Timothy Devlin_____
Timothy Devlin
**DEVLIN LAW FIRM LLC**
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone:  (302) 449-9010
Facsimile:  (302) 353-4251
tdevlin@devlinlawfirm.com
lmonfredo@devlinlawfirm.com

*Attorneys for Plaintiff Aegis 11 S.A.*

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 3, 2020, I caused a copy of this document to be served by transmitting it via e-mail or electronic transmission to counsel of record for Defendant.


*/s/ Timothy Devlin*
Timothy Devlin

11