**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AEGIS 11 S.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A No. 19-1161-RGA |
| | ) | |
| BELKIN INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| AEGIS 11 S.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1162-RGA |
| | ) | |
| NETGEAR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| AEGIS 11 S.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1163-RGA |
| | ) | |
| ROKU, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
<u>PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899
302.654.1888
302.504.3700 (fax)
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Of Counsel*:

Kent E. Baldauf, Jr.
Bryan P. Clark
THE WEBB LAW FIRM
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815/412.471.4094 (fax)
kbaldaufjr@webblaw.com
bclark@webblaw.com

*Attorneys for Defendants Roku, Inc. and
NETGEAR, Inc.*

Dated:  November 3, 2020

DUANE MORRIS LLP
Richard L. Renck (#3893)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
302.657.4900
302.657.4901 (fax)
rlrenck@duanemorris.com

*Of Counsel*:

Matthew C. Gaudet
Matthew S. Yungwirth
Alice E. Snedeker
DUANE MORRIS LLP
1075 Peachtree Street NE, Suite 2000
Atlanta, GA 30309
404.253.6900
404.253.6901 (fax)
mcgaudet@duanemorris.com
msyungwirth@duanemorris.com
aesnedeker@duanemorris.com

*Attorneys for Defendant
Belkin International, Inc.*

## TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENTS .............................................. 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 3

III.    LEGAL STANDARD.................................................................................................... 3

        A.      Legal Standard for Motion to Dismiss...................................................... 3

        B.      The Law of Patent-Ineligible Abstract Ideas ........................................... 4

IV.     ARGUMENT................................................................................................................. 6

        A.      The '553 Patent Specification.................................................................... 6

        B.      Claim 1 of the '553 Patent Is Directed to the Abstract Idea of Generating
                and Using Random Numbers as Part of a Mutual Authentication Process............. 7

                1.      The Specification Confirms That the Technical Details of Claim 1
                        Were Already Conventional ........................................................ 8

                2.      Comparable Cases Confirm that Claim 1 is Directed to an Abstract
                        Idea........................................................................................... 9

        C.      Claim 1 Does Not Recite an "Inventive Concept"................................................. 11

        D.      Aegis' New Allegations Do Not Render Claim 1 Patent Eligible ........................ 12

V.      CONCLUSION............................................................................................................. 15

i

# TABLE OF AUTHORITIES

## *CASES*

*3G Licensing, S.A. v. Blackberry Ltd.,*
   302 F. Supp. 3d 640 (D. Del. 2018) ................................................................................ 4

*Alice Corp. v. CLS Bank Int'l*, 1
   34 S. Ct. 2347 (2014) ............................................................................................... *passim*

*Ass'n of Molecular Pathology v. Myriad Genetics, Inc.*,
   569 U.S. 576 (2013) ........................................................................................................ 4

*Berkheimer v. HP Inc.*,
   890 F.3d 1369 (Fed. Cir. 2018) ................................................................................ 12, 13

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ..................................................................................................... 3, 5

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ......................................................................... 4, 5, 6, 15

*Cardpool, Inc. v. Plastic Jungle, Inc.*, No. C 12-04182 WHA,
   2013 WL 245026 (N.D. Cal. Jan. 22, 2013) .................................................................. 4

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) ...................................................................................... 14

*Citrix Sys., Inc. v. Avi Networks, Inc.*, No. 17-1843-LPS,
   2019 WL 582480 (D. Del. Feb. 13, 2019) .................................................................... 15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
   776 F.3d 1343 (Fed. Cir. 2014) ................................................................................... 3, 5

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ...................................................................................... 9

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   815 Fed. Appx. 529 (Fed. Cir. 2020) ......................................................................... 9, 10

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ...................................................................................... 4

*Fort Props., Inc. v. Am. Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012) ...................................................................................... 5

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12-1736-LPS-CJB,
2014 WL 4379587 (D. Del. Sept. 3, 2014)................................................................... 4

*In re Bilski*,
545 F.3d 943 (Fed. Cir. 2008)..................................................................................... 3

*Intellectual Ventures I LLC v. Capital One Bank*,
792 F.3d 1363 (Fed. Cir. 2017)................................................................................. 12

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016)................................................................................. 11

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015)................................................................................... 4

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018)............................................................................. 9, 14

*IPA Techs., Inc. v. Amazon.com, Inc.*, No. 16-1266-RGA,
2018 WL 1583051 (D. Del. Mar. 31, 2018) ........................................................... 4, 6

*Mayo Collaborative Services v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012)........................................................................................... 5, 12

*OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233 EMC,
2012 WL 3985118 (N.D. Cal. Sept. 11, 2012) ........................................................... 4

*Prism Technologies LLC v. T-Mobile USA, Inc.*,
696 Fed. Appx. 1014 (Fed. Cir. 2017)................................................................... 9, 10

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
855 F.3d 1322 (Fed. Cir. 2017)................................................................................... 4

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017)............................................................................... 9, 10

*TriPlay, Inc. v. WhatsApp Inc.*, No. 13-1703-LPS-CJB,
2018 WL 1479027 (D. Del. Mar. 27, 2018) ............................................................... 4

*Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-1771-RGA,
2014 WL 4382446 (D. Del. Sept. 3, 2014) ................................................................. 4

*UbiComm, LLC v. Zappos IP, Inc.*, No. 13-1029-RGA,
2013 WL 6019203 (D. Del. Nov. 13, 2013) ............................................................... 4

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014).................................................................................... 3, 5, 6

### STATUTES

35 U.S.C. § 101.............................................................................................................. 3, 4

### RULES

Fed. R. Civ. P. 12(b)(6)................................................................................................. 3, 4

Defendants, Roku, Inc., Belkin International, Inc. and NETGEAR, Inc. (collectively, "Defendants"), respectfully bring this Partial Motion to Dismiss Count I of Plaintiff, Aegis 11 S.A.'s ("Aegis"), First Amended Complaints[1] for infringement of U.S. Patent No. 6,839,553[2] ("the '553 Patent").

## I.      INTRODUCTION AND SUMMARY OF ARGUMENTS

This Court previously found that claim 1 of the '553 Patent is "directed to the abstract idea of generating and using random numbers for the purpose of mutual authentication," and on that basis dismissed Count I of Aegis's Complaint (D.I. 1) ("Original Complaint").  (D.I. 20 at 2-3). Count I of Aegis's Amended Complaint again asserts infringement of claim 1 of the '553 Patent. (D.I. 27 at ¶¶ 25-46).   The language of claim 1 and the statements made in the specification characterizing the alleged invention remain as they were when the Court dismissed Count I of the Original Complaint, and the "new" averments in the Amended Complaint largely rehash points the Court already considered and rejected.   Accordingly, dismissal of Count I of the Amended Complaint is also warranted.

Claim 1 states:

1. A method of managing mobile station operational parameters in a wireless communication network comprising:

transmitting a message from a network to a mobile station to indicate an initiation of an update of the mobile station operational parameters; and

updating the mobile station operational parameters after completing a mutual authentication between the mobile station and the network, wherein the mutual authentication comprises each of an authentication of the mobile station by the network and an authentication of the network by the mobile station, and wherein the mutual authentication is performed by generating at least one random number by each of the network and the mobile station.

---

[1] Because AEGIS's First Amended Complaints against Defendants do not differ in substantial ways, Defendants cite herein to C.A. No. 19-1162-RGA, D.I. 27 ("Amended Complaint"), for purposes of this Motion.
[2] The '553 Patent is attached as Exhibit A to the Amended Complaint.

(D.I. 27, Ex. A at 8:44-8:58).  In essence, claim 1 covers the transmission of information between two devices after the completion of a mutual authentication process involving the generation of random numbers by each device.  Claim 1 lacks any detail regarding how the random numbers are generated, why they are generated or how the generation of those numbers leads to the mutual authentication.  As Magistrate Judge Fallon previously found, "claim 1 recites only results-based, functional language without articulating how to achieve the stated goal of mutual authentication in a non-abstract way."  (D.I. 17 at 9). Nothing in the Amended Complaint warrants revisiting this finding.

Defendants' argument and Magistrate Judge Fallon's previous finding are rooted in the '553 Patent specification, which confirms that claim 1 covers an abstract idea.  In particular, as Magistrate Judge Fallon found, the specification confirms that:

- the claimed mutual authentication process is the focus of the claimed advance over the prior art (D.I. 17 at 7, citing '553 Patent at Abstract);

- technology which allows changing specific parameters of a mobile station by wireless communication was already in existence (D.I. 17 at 7, citing '553 Patent at 1:35-41);

- authentication of the mobile station to the network and the network to the mobile station could be done through two separate authentication steps (D.I. 17 at 7-8, citing '553 Patent 1:53-54); and

- authentication of the network to the mobile station using random numbers was known.  (D.I. 17 at 9, citing '553 Patent at 1:38-41 (expressly incorporating by reference PCT application No. WO98/41044).[3]

In view of this admitted background, the purported novelty in claim 1 is simply generating random numbers for this mutual authentication.  This allegedly novel improvement over the prior art is an abstract concept, as the Court previously found.  Thus, claim 1 of the '553 Patent is ineligible and

---

[3] For the Court's convenience, PCT application No. WO98/41044 is attached as Ex. A to this Motion.

Defendants are entitled to dismissal of Count I of the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On June 21, 2019, Aegis filed its Original Complaint against Defendants and others. (D.I. 1). On October 15, 2019, Defendants filed a partial motion under Rule 12(b)(6) to dismiss Count I of each complaint for infringement of the '553 Patent (D.I. 10-11).  On July 20, 2020, Magistrate Judge Fallon recommended granting Defendants' motion.  (D.I. 17).  On September 9, 2020, the Court adopted Judge Fallon's recommendations and dismissed Count I of each complaint without prejudice. (D.I. 20).  Aegis filed its Amended Complaint against Defendants on October 20, 2020 which included additional allegations regarding the '553 patent and also asserted a fourth patent. (*See, e.g.*, D.I. 27).  Defendants file this Motion in lieu of an Answer to the Amended Complaint.

## III.    LEGAL STANDARD

### A.    Legal Standard for Motion to Dismiss

Patent eligibility under 35 U.S.C. § 101 is a "threshold inquiry" where "one must focus on the [patent] claims" to determine whether any actionable claim exists.  *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008) (*en banc*), *aff'd, Bilski v. Kappos*, 561 U.S. 593 (2010).   Only an "understanding of the basic character of the claimed subject matter" is required to resolve the legal issue of patent-eligible subject matter.  *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).  Accordingly, a § 101 inquiry may be raised in a motion to dismiss under Rule 12(b)(6).  *See, e.g., Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713 (Fed. Cir. 2014) (affirming grant of "pre-answer motion to dismiss under Rule 12(b)(6) without formally construing the claims").  District courts around the country, including this Court,

have routinely granted Rule 12(b)(6) motions on § 101 grounds without engaging in formal claim construction.[4]

### B.       The Law of Patent-Ineligible Abstract Ideas

Abstract ideas "are not patentable" under 35 U.S.C. § 101. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n of Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). *Alice* mandates a two-step framework to determine whether patents claim unpatentable abstract ideas. *See id.* at 2355. In *Alice* step one, a court must determine whether, in light of the patent's specification, the claims' "character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). As part of that analysis, courts assess "whether the claims are directed to a specific means or method for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (internal quotes omitted). Comparing the "claims at issue to those claims already found to be directed to an abstract idea in previous cases" also informs this inquiry. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The factual conclusion that practicing a claim improves computer functionality does not end the *Alice* step one inquiry. Rather, the Court must also consider the source of the improved computer functionality. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018). A claim is not "directed to" an improvement in computer

---

[4] *3G Licensing, S.A. v. Blackberry Ltd.,* 302 F. Supp. 3d 640, 655 (D. Del. 2018) (granting motion to dismiss); *IPA Techs., Inc. v. Amazon.com, Inc.*, No. 16-1266-RGA, 2018 WL 1583051, at *12 (D. Del. Mar. 31, 2018) (same); *TriPlay, Inc. v. WhatsApp Inc.*, No. 13-1703-LPS-CJB, 2018 WL 1479027, at *12 (D. Del. Mar. 27, 2018) (same); *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12-1736-LPS-CJB, 2014 WL 4379587, at *14 (D. Del. Sept. 3, 2014) (same); *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-1771-RGA, 2014 WL 4382446, at *6 (D. Del. Sept. 3, 2014) (same); *UbiComm, LLC v. Zappos IP, Inc.*, No. 13-1029-RGA, 2013 WL 6019203, at *6-7 (D. Del. Nov. 13, 2013) (same); *Cardpool, Inc. v. Plastic Jungle, Inc.*, No. C 12-04182 WHA, 2013 WL 245026, at *4 (N.D. Cal. Jan. 22, 2013) (same); *OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233 EMC, 2012 WL 3985118, at *20 (N.D. Cal. Sept. 11, 2012) (same).

4

functionality if the technical benefits flow solely from performing an abstract idea in conjunction with well-understood structure. *Id*.

A claim also does not reflect a technical improvement if it includes only token or insignificant pre- or post-solution activity, such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297-98, 1300-01 (2012); *Bilski*, 561 U.S. at 609-612. And "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not 'impose meaningful limits on the claim's scope.'"). Likewise, merely limiting the use of the abstract idea to a particular technological environment is insufficient to save an otherwise patent-ineligible claim. *See Ultramercial*, 772 F.3d at 716 ("Narrowing the abstract idea of using advertising as a currency to the Internet is an 'attempt[] to limit the use' of the abstract idea 'to a particular technological environment,' which is insufficient to save a claim.") (*quoting Alice*, 134 S. Ct. at 2358) (alterations in original). Moreover, while dependent claims may have a narrower scope than the representative independent claims, in order to transform the claim into a patent-eligible application of the ineligible concept they must themselves define an "inventive concept." *Content Extraction*, 776 F.3d at 1349.

If the claims are directed to an abstract idea, then a court must proceed to *Alice* step two, where the analysis shifts to determine whether the claims include an "inventive concept" "sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357. To avoid invalidation under this second step, the claims "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*,

772 F.3d at 715 (citations and internal quotation marks omitted). "Factual allegations in the pleadings that allege that claim elements are not well understood, routine or conventional are not taken as true where they contradict admissions in the specification or the claims themselves." *IPA Techs.*, 2019 WL 259100, at \*5 (internal citations omitted). Moreover, "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech*, 899 F.3d at 1290. Instead, the relevant question is "whether the claim limitations *other than the invention's use of the ineligible concept* to which it was directed were well-understood, routine and conventional." *Id*. (emphasis added).

## IV.    ARGUMENT

The '553 Patent issued in 2005, almost a decade before the Supreme Court's decision in *Alice* and subsequent decisions by the Federal Circuit refined the jurisprudence on subject matter eligibility. When assessed under the current and governing legal standard, claim 1 of the '553 Patent is directed to the abstract idea of generating and using random numbers as part of a mutual authentication process. The additional elements of the claims are directed to routine and admittedly conventional implementation details, such as using admittedly well-known software and authentication concepts.

### A.    The '553 Patent Specification

The '553 Patent purports to address a problem in existing Over-the-Air Parameter Administration systems and methods ("OTAPA") when updating mobile stations with changes to operating parameters. The "background" of the '553 Patent provides a history of OTAPA and incorporates other publications describing OTAPA. '553 Patent at 1:36-1:41. In doing so, the '553 Patent frames the extent to which the claimed method is an extension of this existing system rather than an invention of the patentee.

According to the '553 Patent, OTAPA was "a technology which allows changing of specific parameters of the mobile station by wireless communication." *Id.*, 1:36-39. Also according to the '553 Patent, OTAPA included "an authentication procedure for a communication network . . . such that a mobile station may confirm whether the network is correct." *Id.*, 1:42-46. PCT application No. WO 98/41044, which is expressly incorporated into the '553 Patent by reference (*Id.*, 1:38-41), provides additional detail regarding the authentication scheme that was part of OTAPA, including the generation of random numbers during the process. *See* '044 Application (Ex. A) at pg. 23, ln. 6-15.

However, an alleged problem with OTAPA was that OTAPA provided only "one-way" authentication whereby the mobile station could authenticate the network, but the network could not authenticate the mobile station. '553 Patent at 1:42-52. The '553 Patent acknowledges that existing networks could authenticate the mobile station before the OTAPA process, but alleged that doing so would "elongate" the OTAPA process. '553 Patent at 1:53-57. The '553 Patent purports to address these problems by changing OTAPA's one-way, random number authentication process to a mutual, random number authentication process.

**B.     Claim 1 of the '553 Patent Is Directed to the Abstract Idea of Generating and Using Random Numbers as Part of a Mutual Authentication Process**

Claim 1 of the '553 Patent is directed to the abstract idea of generating and using random numbers (which network devices have done for ages) for the purpose of mutual authentication (authentication, as admitted by the '553 Patent, was a known, conventional purpose). The claim simply applies this basic concept to the field of a "mobile station" in a "wireless communication network" in the context of prior art authentication and prior art operational parameter update processes. Claim 1 lacks any detail regarding how the random numbers are generated, why they

are generated or how the generation of those numbers leads to the mutual authentication. *Alice* dictates that such basic, abstract ideas are not patentable.

### 1.    The Specification Confirms That the Technical Details of Claim 1 Were Already Conventional

The specification confirms that each step recited in claim 1 comprises nothing more than a generic process that was either already known (*e.g.*, already part of OTAPA) or is recited in such general, functional terms to not constitute a patent eligible concept.

For example, the specification acknowledges that the steps of "transmitting a message from a network to a mobile station to indicate an initiation of an update of the mobile station operational parameters" and "updating the mobile station operational parameters" are not inventive, but rather part of the existing OTAPA system. '553 Patent at 1:17-30, 1:36-45, 2:6-11.

Similarly, the specification acknowledges that the concept of using "authentication" between the "mobile station" and the "network" as part of this updating process was also known. '553 Patent at 1:42-44 ("an authentication procedure for a communication network is included in the OTAPA process"). And the specification acknowledges that the concept of mutual authentication was also known. '553 Patent at 1:53-54 ("[T]he network may first perform an authentication procedure of a mobile stations before the OTAPA process."). Moreover, by expressly incorporating by reference the '044 Application (Ex. A), the specification also acknowledges that generating and using random numbers for the purpose of "authentication" was known. *Id.* at 1:38-41 ("The OTAPA is disclosed in . . . PCT application No. WO 98/4104 by Northern Telecom Inc., fully incorporated herein."), 1:60-62; Ex. A at pg. 23, ln. 6-15.

Thus, all that remains of claim 1 is that, instead of generating and using random numbers to authenticate the network and separately authenticating the mobile station, the mobile station is also authenticated using random numbers. However, claim 1 lacks any detail regarding how the

8

random numbers are generated, why they are generated or how the generation of those numbers leads to the "mutual" authentication.  As such, these features fail to constitute a patent eligible concept because they are recited in such a generic and results-oriented manner that the patent is directed to the abstract concept—generating and using random numbers for the purpose of mutual authentication—rather than application of that concept in a meaningful way.  This is a problem of the patentee's own making.  Despite ample discussion in the specification providing concrete ways the claimed mutual authentication could be performed, claim 1 did not include any such detail.  *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018) (finding limitation abstract because it "demands the production of a desired result . . . without any limitation on how to produce that result.").

### 2.    Comparable Cases Confirm that Claim 1 is Directed to an Abstract Idea

Several similar cases also demonstrate that claim 1 of the '553 Patent is directed to an abstract idea.  The Federal Circuit has repeatedly found claims directed to authenticating a user's identity, authenticating information, and, generally, verifying information, to be directed to abstract concepts that are ineligible for patent protection.  *See Prism Technologies LLC v. T-Mobile USA, Inc.,* 696 Fed. Appx. 1014 (Fed. Cir. 2017) (claims reciting "authenticating . . . identity data" found abstract); *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 906 (Fed. Cir. 2017) (invalidating claims relating to "authenticating information"); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) (claims relating to verification of credit card transactions found abstract); *Dropbox, Inc. v. Synchronoss Techs., Inc*., 815 Fed. Appx. 529 (Fed. Cir. 2020) (claims to a system for limiting access to only verified users found abstract).

In *Prism*, the Federal Circuit found ineligible claims relating to computer security and, more particularly, authentication of identity data.  *See Prism*, 696 Fed. Appx. at 1017.  The claims

9

at issue recited a "method for controlling access . . . to protected computer resources" that included "receiving . . . identity data associated with at least one client computer device" and "authenticating . . . the identity data." *Id*. at 1016. The Court found the claims impermissibly abstract because—as is also the case here—they were "directed to the abstract idea of providing restricted access to resources." *Id.* at 1017 (quotations omitted). The fact that the claims recited authentication of identity data did not save the claims. Indeed, the claims as a whole were found to be directed to nothing more than an abstract process. *See id*.

Similarly, in *Secured Mail*, the Federal Circuit found ineligible claims reciting a method for verifying the authenticity of a mail object. *See Secured Mail*, 873 F.3d at 907. In that case, the recipient of a mail object could use authenticating information on the mail object "to verify that a mail object is authentic" by looking up that authenticating information in a database. *Id*. Despite the presence of such authenticating information, the claims were found impermissibly abstract because no special rules or details of the computers or databases used to implement the alleged invention were recited in the claims. *See id.* at 910.

In *Dropbox*, the Federal Circuit found ineligible claims reciting a method for verifying access to information to only users that met the requisite security level. *See* 815 Fed. Appx. at 532. The claims were found impermissibly abstract because the "access checker" that ensured access to only verified users was claimed as a "black box" without any details as to how it performed the recited functions. *See id.* at 533.

Like the claims at issue in these other cases, claim 1 in this case also does not recite any details as to how the idea is implemented, such as how the random numbers are generated, why they are generated or how the generation of those numbers leads to the "mutual" authentication between the devices. Moreover, like the claims found ineligible in *Prism* and *Secured Mail*, claim

10

1 is, at its core, directed to a type of "authentication" on a network where the concept of authentication in claim 1 is recited so broadly and detached from how to implement the concept that the claim is ultimately directed to the idea of mutual authentication itself rather than any practical use of this concept in a meaningful way. Thus, claim 1 is not directed to a patent eligible concept, but is instead directed to the abstract idea of generating and using random numbers for the purpose of authentication.

### C.      Claim 1 Does Not Recite an "Inventive Concept"

Once an abstract idea is identified, the second step of the *Alice* test requires the court to evaluate whether the claims sufficiently recite "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice,* 134 S. Ct. at 2355 (internal quotations and citations omitted). Claim 1 of the '553 patent does not recite any such inventive concept. Although the claim language appears technical by reciting a particular environment, *i.e.*, a "mobile station" in a "wireless communication network," and by reciting steps of "managing" and "updating" "mobile station operational parameters," and "mutual authentication between the mobile station and the network," it ultimately recites nothing even arguably inventive beyond the abstract idea of mutual authentication using random numbers discussed above. For example, the '553 Patent does not purport to have invented the "mobile station," "wireless communication network," "mobile station operational parameters," wireless updating of such parameters, generating and using random numbers for the purpose of authentication, or mutual authentication of the mobile station to the network. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (a patent's specification is "particularly useful in determining what is well-known or conventional").

11

The *Alice* inquiry also requires consideration of whether the "ordered combination" of limitations amounts to an inventive concept. *Alice*, 134 S. Ct. at 2355. However, in this case, the ordered combination of steps "ad[d] nothing ... that is not already present when the steps are considered separately." *Id.* at 2359 (quoting *Mayo*, 132 S. Ct. at 1298). Performing all of the steps in order creates nothing significant beyond the routine actions which make up each step individually discussed above. This is confirmed by the '553 Patent itself, which admits that the *combination* of authentication for a communication network, wireless over the air parameter administration, and changing of specific parameters by wireless communications, is conventional. '553 Patent at 2:35-45; '044 Application pg. 8, ln. 27–pg. 9, ln. 3.

Finally, the '553 Patent contends that mutual authentication during the conventional OTAPA process results in improved reliability of the management system, increased quality of service, and decreased load in a communication network. '553 Patent at 1:46-59, 1:65-2:10. Even if true, however, any such benefits would not constitute an inventive concept because they would merely be the result of applying the abstract idea itself. *See Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363, 1367 (Fed. Cir. 2017) ("Nor, in addressing the second step of Alice, does claiming the improved speed or efficiency inherent with applying the abstract idea on a computer provide a sufficient inventive concept.") (citation omitted); *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1371 (Fed. Cir. 2018) ("In a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute.").

### D.    Aegis' New Allegations Do Not Render Claim 1 Patent Eligible

The Amended Complaint includes several new averments directed to the '553 Patent, and these appear at paragraphs 29-30 and 35-40. (*See* D.I. 23 at Ex. 2 (redline showing changes from Original Complaint)). However, these new averments do not warrant modification of the Court's

earlier finding that claim 1 is patent ineligible.  Indeed, the Court already considered the substance of these averments the first time it dismissed Count I.

First, the new averments attempt to call into question whether OTAPA was well-known or conventional at the time of the '553 Patent.  (D.I. 27 at ¶¶ 29-30).  However, as Magistrate Judge Fallon determined after considering this same argument, whether mutual authentication using OTAPA is well-understood, routine, or conventional is not relevant to the *Alice* analysis because the claim "is not limited to mutual authentication using OTAPA or any other manner of generating random numbers" and "the issue of whether OTAPA is prior art is therefore 'neither outcome-determinative nor a fact issue that need[s] [to] be resolved at this stage.'" (D.I. 17 at 8, fn.2).

In any event, these averments contradict other allegations in the Amended Complaint and the specification, and are therefore not plausible. For example, elsewhere in the Amended Complaint, Aegis characterizes OTAPA as "prior art" and alleges that it was a known "authentication procedure" at the time of the '553 Patent. *See* D.I. 27 at ¶ 32 (citing '553 Patent, 1:53-59: "As the '553 patent explains, one of the limitations of the prior art regarding authentication for over-the-air updates was that an authentication procedure performed independently at the mobile station would elongate the update process and increase the load in the network.").  The specification is also clear that, as of the time of the filing of the application that led to the '553 Patent "a technology which allows changing of specific parameters of the mobile station by wireless communication has been developed, known as the Over-The-Air Parameter Administration (OTAPA)." '553 Patent, 1:35-38.  Thus, these new averments do not create a genuine dispute regarding the status of OTAPA as known prior art. *Berkheimer*, 890 F.3d at 1371 ("In a situation where the specification admits the additional claim elements are well-understood,

13

routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute.").

Second, the Amended Complaint raises (at Paragraphs 35-40) various alleged advantages that allegedly flow from "[t]he mutual authentication described in the '553 patent specification." For example, Aegis asserts that the mutual authentication described in the '553 Patent is "a single process" that is "efficient" and "seamless" in that it "requires only three messages" whereas the independent one-way authentications would require at least four. (D.I. 27 at ¶ 36-39). Aegis also asserts that "[a]nother advantage described by the '553 patent is the increased security of two-way mutual authentication versus prior art methods of one way authentication." (*Id*. at ¶ 40).

However, the Amended Complaint does not tie, or even attempt to tie, these alleged benefits and advantages to claim 1. Claim 1 does not, for example, limit the "mutual authentication" to a "single process" or require "only three messages." Instead, these features are described in the specification (if at all) with respect to specific implementations, not with respect to "mutual authentication" generally. "Ultimately, '[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves,' . . . and the specification cannot be used to import details from the specification if those details are not claimed." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) (internal citation omitted).

Even assuming these benefits are part of the process recited in claim 1, the claim must still describe how to achieve the benefit in a manner that encompasses something more than the "principle in the abstract." *See ChargePoint,* 920 F.3d at 769 (explaining that an invention may not be patent eligible if the "claims 'were drafted in such a result-oriented way that they amounted to encompassing the 'principle in the abstract' no matter how implemented'" (*quoting Interval Licensing*, 896 F.3d at 1343)). Again, as noted by Magistrate Judge Fallon, "claim 1 of the '553

14

patent provides no specifics regarding the steps or rules for generating random numbers necessary to perform mutual authentication, nor does it explain how those random numbers achieve the claimed mutual authentication. (D.I. 17 at 12). Instead, claim 1 simply applies the principle of generating and using random numbers for mutual authentication in a standard wireless environment and claims the result thereof. Any benefits allegedly gained through the application of this abstract idea cannot amount to an inventive concept. (*See* D.I. 17 at 16, *citing BSG Tech*, 899 F.3d at 1290 ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than the ineligible concept.")); *see also Citrix Sys., Inc. v. Avi Networks, Inc.*, No. 17-1843-LPS, 2019 WL 582480, at \*8 (D. Del. Feb. 13, 2019) ("here, as in *BSG Tech*, the claims are not directed to a technical improvement as the purported technical benefit flows solely from an abstract idea.").

## V.    CONCLUSION

For the foregoing reasons, claim 1 of the '553 Patent fails to recite patent eligible subject matter, and Count I of Aegis' Amended Complaint, which asserts only this claim, fails to state a claim against Defendants and should be dismissed with prejudice.

**ASHBY & GEDDES**

*/s/ Steven J. Balick*
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899
302.654.1888
302.504.3700 (fax)
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

15

OF COUNSEL:

Kent E. Baldauf, Jr.
Bryan P. Clark
**THE WEBB LAW FIRM**
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815/412.471.4094 (fax)
kbaldaufjr@webblaw.com
bclark@webblaw.com

*Attorneys for Defendants Roku, Inc. and
NETGEAR, Inc.*


**DUANE MORRIS LLP**

*/s/ Richard L. Renck*
Richard L. Renck (#3893)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
302.657.4900
302.657.4901 (fax)
rlrenck@duanemorris.com

OF COUNSEL:

Matthew C. Gaudet
Matthew S. Yungwirth
Alice E. Snedeker
**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 2000
Atlanta, GA 30309
404.253.6900
404.253.6901 (fax)
mcgaudet@duanemorris.com
msyungwirth@duanemorris.com
aesnedeker@duanemorris.com

*Attorneys for Defendant
Belkin International, Inc.*

Dated: November 3, 2020

16